UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SUPERMEDIA, INC., ET AL.,       )
                                    )
         Plaintiffs,      )
                                    )      CIVIL ACTION NO.
VS.                            )
                                    )      3:12-CV-2034-G
CAROL FOY, ET AL,       )
                                    )
         Defendants.     )

## MEMORANDUM OPINION AND ORDER

Before the court are (1) the motion of the defendants Bell, Foy, Ketzer, Kraft, Lane, Leynes, Russo, Shapses, and Sullivan (the "moving defendants") to dismiss the plaintiffs' claims against them (docket entry 71), and (2) the plaintiffs' motion to dismiss the counterclaims of the defendants Mentzer, Noe, Ohnstad, Palmer, and Zenus (the "Mentzer defendants") (docket entry 86).  For the reasons stated below, the moving defendants' motion is granted and the plaintiffs' motion is also granted.

## I. BACKGROUND

This is a suit for declaratory judgment under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq*. ("ERISA").  *See* Plaintiffs' First

Amended Class Action Complaint for Declaratory Judgment ("Complaint") at 2 (docket entry 23).  The plaintiffs, SuperMedia Inc., SuperMedia LLC, SuperMedia Services Inc., SuperMedia Sales Inc., SuperMedia Employee Benefits Committee, and Idearc Inceptor LTD (collectively, "SuperMedia" or the "plaintiffs"), are various corporate entities operating in the business of providing media solutions.  *Id.* ¶¶ 2-7, 38.  On June 25, 2012, SuperMedia enacted amendments to its retiree health and welfare benefits plans (the "amendments").  *Id.* ¶¶ 51-52.  Because SuperMedia was aware that these amendments might cause significant contention between it and the affected retirees, it filed this suit on June 26, 2012, seeking a declaratory judgment announcing the legality of these amendments.  *Id.* ¶¶ 1, 64-66.  The defendants are Linton Bell ("Bell"), Pamela Bennett ("Bennett"), Carol Foy ("Foy"), Margaret Ketzer ("Ketzer"), Joanie Kraft ("Kraft"), Theresa Lane ("Lane"), Sharon Leynes ("Leynes"), Robert Mentzer ("Mentzer"), Sandra Noe ("Noe"), Carl Ohnstad ("Ohnstad"), Claire Palmer ("Palmer"), Stanley Russo ("Russo"), Howard Shapses ("Shapses"), John Sullivan ("Sullivan"), and Bernard Zenus ("Zenus") (collectively, the "defendants").  *Id.* ¶¶ 8-30.[1]  The defendants are among those retirees potentially affected by the

---

[1]     The following defendants named in the first amended complaint were subsequently dismissed by orders granting agreed motions to dismiss:  (1) Martha Bobo (docket entry 67), (2) Dale Burks (docket entry 67), (3) Dennis Cassidy (docket entry 67), (4) Joseph Gallagher (docket entry 51), (5) Beverly Gemmell (docket entry 50), (6) Edwin Hanson (docket entry 72), (7) Christine Harvey (docket entry 91), and (8) Patricia Lindop (docket entry 52).

amendments.  They have voiced various objections to SuperMedia concerning the

amendments.  *Id.* ¶ 65.

SuperMedia's complaint in this case was filed on June 26, 2012.  The moving

defendants filed the instant motion to dismiss on October 12, 2012.  The Mentzer

defendants filed an answer with counterclaims on October 15, 2012.  The plaintiffs

filed the instant motion to dismiss those counterclaims on November 16, 2012.

## II.  ANALYSIS

### A.  The Moving Defendants' Motion to Dismiss: Personal Jurisdiction

#### 1.  *Factual Standard:  A* Prima Facie *Case*

When a nonresident defendant moves to dismiss for lack of personal

jurisdiction, the plaintiff bears the burden of establishing the district court's

jurisdiction over the nonresident.  *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert.*

*denied*, 513 U.S. 930 (1994); *Gardemal v. Westin Hotel Company*, 186 F.3d 588, 592

(5th Cir. 1999).  If the district court chooses to decide the matter without an

evidentiary hearing, the plaintiff may meet its burden by presenting a *prima facie* case

for personal jurisdiction.  *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.  The

court will take the allegations of the complaint as true, except where they are

controverted by opposing affidavits, and all conflicts in the facts are resolved in favor

of the plaintiff.  *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.  In making its

determination, the court may consider affidavits, interrogatories, depositions, oral

testimony, or any combination of recognized discovery methods.  *Allred v. Moore &*

*Peterson*, 117 F.3d 278, 281(5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998);

*Thompson v. Chrysler Motors Corporation*, 755 F.2d 1162, 1165 (5th Cir. 1985).

> 2.  *Legal Standards and Application*

> a.  Statute-Based Personal Jurisdiction:  ERISA's
> Nationwide Service of Process

FED. R. CIV. P. 4(k)(1)(C) provides that "[s]erving a summons or filing a

waiver of service establishes personal jurisdiction over a defendant:  . . . when

authorized by a federal statute."  29 U.S.C. § 1132(e)(2) authorizes nationwide

service of process "[w]here an action is brought under this subchapter."  Subchapter I

of ERISA contains provisions under the heading "Protection of Employee Benefit

Rights" and is codified at 29 U.S.C. §§ 1001-1191(c).  Since Congress may not

override the Constitution, where a federal statute like ERISA authorizes nationwide

service of process, the Fifth Circuit has held that the Fifth Amendment right to due

process requires that a defendant so served have minimum contacts with the United

States.  See *Bellaire General Hospital v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822,

826 (5th Cir. 1996) (citing *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d

1255, 1258 (5th Cir. 1994)).

Here, the moving defendants do not dispute that they have sufficient

minimum contacts with the United States.  *See generally* Memorandum in Support of

Motion to Dismiss Defendants Bell, Foy, Harvey, Ketzer, Kraft, Lane, Leynes, Russo,

Shapses, and Sullivan ("Defendants' Motion") (docket entry 71-1).  Rather, they argue that SuperMedia's case does not fall "under this subchapter" of ERISA, because (1) SuperMedia brought the action under the Declaratory Judgment Act, 28 U.S.C. § 2201, *see* Defendants' Motion at 1-2, and (2) there is no provision of ERISA that specifically authorizes this action, *id.* at 8.  This, according to the moving defendants, means that ERISA's nationwide service of process provision does not apply and that the plaintiffs must make a *prima facie* case of personal jurisdiction under traditional principles.  *Id.*

The plaintiffs respond that, while the Declaratory Judgment Act increases the scope of remedies available to a plaintiff, courts consistently hold that it does not provide an independent cause of action.  *See* Plaintiffs' Response to Bell Defendants' Motion to Dismiss and Brief in Support ("Plaintiffs' Response") at 9 (docket entry 88); see also, *e.g., Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997) (citing cases); *Michigan Savings and Loan League v. Francis*, 683 F.2d 957, 960 (6th Cir. 1982) (citing *Skelly Oil Company v. Phillips Petroleum Company*, 339 U.S. 667 (1950), and *Aetna Life Insurance Company v. Haworth*, 300 U.S. 227 (1937)).  The plaintiffs also cite the ample case law holding that a court has subject matter jurisdiction of an ERISA action for a declaratory judgment, where the defendant in the action could have brought a separate ERISA action as a plaintiff to enforce rights or recover plan benefits (the "mirror image rule").  Plaintiffs' Response at 10-11; see also, *e.g.,*

*NewPage Wisconsin System Inc. v. United Steel, Paper & Forestry, Rubber, Manufacturing, Energy Allied Industrial and Service Workers International Union, AFL-CIO/CLC*, 651 F.3d 775, 778 (7th Cir. 2011) (referring to a declaratory judgment defendant's hypothetical suit as plaintiff as a "mirror-image" suit).  Under the plaintiffs' argument, since the case law makes clear that ERISA is the source of the court's subject matter jurisdiction here, the action is clearly one for which nationwide service of process is available.  Plaintiff's Response at 12.  Since nationwide service of process is available, and since the moving defendants have minimum contacts with the United States, the plaintiffs assert, the court has personal jurisdiction over the moving defendants.  *Id.*

While the plaintiffs' argument has some force, the mere fact that courts generally rely on the mirror image rule to find that ERISA confers subject matter jurisdiction in cases like this one does not resolve the problem of the applicability of ERISA's nationwide service of process provision.  The court must first interpret 29 U.S.C. § 1132(e)(2)'s phrase "an action . . . under this subchapter."  The plaintiffs have presented minimal argument to demonstrate that the phrase should be interpreted to mean "an action for which ERISA is the source of subject matter jurisdiction."  See *id.* at 10-12.

The interpretation of § 1132(e)(2) has played a key role in a number of appellate cases examining personal jurisdiction in ERISA declaratory judgment

actions brought by plan administrators. See, *e.g.*, *Gulf Life Insurance Company v. Arnold*, 809 F.2d 1520, 1523 (11th Cir. 1987); *NGS American, Inc. v. Jefferson*, 218 F.3d 519, 524 (6th Cir. 2000); *Denny's, Inc. v. Cake*, 364 F.3d 521, 525 (4th Cir.), *cert. denied*, 543 U.S. 940 (2004). In these cases, the circuit courts have followed the same procedure, looking to 29 U.S.C. § 1132(a)(3), which delineates the types of actions a fiduciary is authorized to bring, to determine whether the case falls "under this subchapter" for purposes of nationwide service. See *Gulf Life*, 809 F.2d at 1523; *NGS American*, 218 F.3d at 524; *Denny's, Inc.*, 364 F.3d at 525. The interpretive conclusion these courts implicitly adopt is that, for an action to fall "under this subchapter," 29 U.S.C. § 1132(e)(2), it must be specifically authorized by Subchapter I of ERISA, not merely an action for which ERISA supplies subject matter jurisdiction.

In the case most directly square with the facts here, the Eleventh Circuit ruled that ERISA's nationwide service of process provision was unavailable in a declaratory judgment action in which a plan administrator sought a ruling on the legality of its denial of an individual's claim for certain benefits. See *Gulf Life*, 809 F.2d at 1522, 1525. The plan administrator had argued that the action fell within § 1132(a)(3) and that therefore it was an action "under this subchapter" for purposes of § 1132(e)(2). *Id.* at 1523.

The court determined that, for several reasons, the action was not authorized by § 1132(a)(3).  First, it noted that § 1132(a)(3) only permits fiduciaries to bring injunctive actions or actions for "other equitable relief."  *Id.*  Since the plan administrator had not made a claim for injunctive relief, the court analyzed whether its declaratory judgment claim was equitable.  *Id.*  Noting that "[b]ut for the Declaratory Judgment Act, the only way this action could have arisen is as a suit by [the defendant] to collect the severance pay he claims he is due," the court determined the declaratory judgment claim should be characterized as legal, not equitable, and therefore it did not fall within § 1132(a)(3).  *Id.*  The court additionally observed that § 1132(a)(3) is only available for actions seeking to "enforce" ERISA or plan provisions.  *Id.*  The court held that "Gulf Life's action is defensive in nature.  . . .  Seeking a declaration of its liability does not 'enforce' the plan."  *Id.* at 1523-24.  Because the plan administrator had not shown that the action was one "under this subchapter," the Eleventh Circuit determined that nationwide service of process was not available and the district court therefore did not have personal jurisdiction over the defendants in the case.  *Id.* at 1525.

Instead of pointing to a specific provision of ERISA authorizing their suit, the plaintiffs here simply assert (with little accompanying argument) that the fact that subject matter jurisdiction is available for suits like theirs means that nationwide service of process is available to them.  *See* Plaintiff's Response at 12.  The court is

- 8 -

not persuaded.  Indeed, the court concludes, on the basis of the following, that the narrower reading implied in both *Gulf Life* and other courts' interpretations of § 1132(e)(2) is preferable.  To find an action is "under this subchapter," 29 U.S.C. § 1132(e)(2), the court concludes the plaintiff's action must be authorized by a specific provision of ERISA.  Briefly reviewing a Seventh Circuit case examining subject matter jurisdiction will be instructive.

In *NewPage Wisconsin System Inc.*, the Seventh Circuit ruled a district court had subject matter jurisdiction[2] of an ERISA case very similar in nature to this one, in part because that case was "under this subchapter," 29 U.S.C. § 1132(e)(1).  See *NewPage*, 651 F.3d at 777.  The court explained that the question of subject matter jurisdiction was "a matter of adjudicatory competence," and that "[a] federal district court is the right forum for a dispute about the meaning of ERISA."  *Id.*  The court also relied on the "mirror image" rule courts typically apply when examining subject matter jurisdiction of pure declaratory judgment actions.  *Id.* at 778.  The *NewPage* panel emphasized that, since (1) the defendant in the case already had, in a different forum, brought an action as a plaintiff under 29 U.S.C. §§ 1132(a)(1) and (a)(3), and (2) that suit fell "under this subchapter" for purposes of § 1132(e)(1), therefore "this mirror-image suit by the Plan's sponsor also is within federal subject-matter jurisdiction."  *Id.* at 777-78.  The court finally noted that 28 U.S.C. § 1331

---

[2]     Personal jurisdiction was not apparently contested in the case.

independently supplied subject-matter jurisdiction, because "ERISA claims 'are

necessarily federal in character by virtue of the clearly manifested intent of

Congress.'"  *Id.* at 778.

The reasoning of the Seventh Circuit shows why the questions of personal

jurisdiction raised by this case demand different analysis.  The district court's

"adjudicatory competence" and the "necessarily federal" character of ERISA claims,

factors which aided the Seventh Circuit's conclusion that the plan administrator's

action was one "under this subchapter," 29 U.S.C. § 1132(e)(1), are irrelevant when

personal jurisdiction is in view.  In addition, the hypothetical mirror-image suit --

against which SuperMedia defends via this declaratory judgment action -- would be,

as SuperMedia's own pleadings make clear, a suit by retirees under 29 U.S.C.

§ 1132(a)(1).  *See* Plaintiff's Response at 11.  By the principle of *expressio unius*, other

courts have concluded, and this court agrees, that Congress did not intend to enable a

fiduciary plan administrator like SuperMedia to bring a direct suit under

§ 1132(a)(1).  See, *e.g.*, *NGS American, Inc.*, 218 F.3d at 528; *Gulf Life*, 809 F.2d at

1524.  A court therefore ought not to rush too quickly to the conclusion that

nationwide service of process, which functions to ease the way for plaintiffs to bring

actions Congress authorized in § 1132,[3] is available to fiduciaries for mirror-image

§ 1132(a)(1) declaratory judgment actions.[4]

When Congress permits plaintiffs to override conventional strictures on

personal jurisdiction via nationwide service, the court thinks it reasonable to assume

it does so in order to give greater effect to the purposes of whatever provision

authorizes the action.  See *Rodd v. Region Construction Company*, 783 F.2d 89, 91 (7th

Cir. 1986) ("The intention of Congress was to extend service of process nationwide in

ERISA matters because public policy justifies requiring persons who violate its

provisions to defend themselves in courts across the country.").  But SuperMedia's

declaratory judgment action is unnecessary to further the purposes of § 1132(a)(1).[5]

See *Gulf Life*, 809 F.2d at 1523.  As the *Gulf Life* court noted, a fiduciary like

---

[3]     *See, e.g.*, 29 U.S.C. § 1001(b) ("It is hereby declared to be the policy of this chapter to protect . . . the interests of participants in employee benefit plans and their beneficiaries . . . by providing . . . ready access to the Federal courts."); *Gulf Life*, 809 F.2d at 1524.

[4]     The Seventh Circuit in *NewPage* did not fully explain its conclusion that the plaintiff's declaratory judgment claim was one "under this subchapter," 29 U.S.C. § 1132(e)(1), noting only that the claim was "under ERISA." *NewPage*, 651 F.3d at 777.  However, the court there did observe that the mirror image suit the defendants in the case had already brought was under both § 1132(a)(1) and (a)(3).  Since § 1132(a)(3) permits a direct action by a fiduciary, the declaratory judgment action in that case was "under this subchapter," § 1132(e)(1), even using the narrower definition this court has concluded is appropriate for that phrase in § 1132(e)(2).

[5]     Indeed, such an action is also unnecessary to further the purpose of Subchapter I of ERISA considered broadly, a section that is concerned with (as its title suggests) "Protection of Employee Benefit Rights."

SuperMedia may simply enforce the terms of its plans by granting some claims for benefits and denying others that it finds do not fall within those plans. *Id.* at 1523. Moreover, allowing fiduciaries like SuperMedia to take advantage of nationwide service in suits like this is very likely to frustrate the purposes of § 1132(a)(1), by making it easier for a fiduciary to delay indefinitely a claimant's ability to challenge a denied claim for benefits. *Id.* at 1525.

Thus, the facts that (1) fiduciaries are not named in § 1132(a)(1), (2) fiduciaries need not use this provision to "enforce" a benefits plan, and (3) allowing fiduciaries to rely on § 1132(a)(1) to gain access to nationwide service could have perverse results, all indicate that Congress did not intend to ease the way -- via nationwide service -- for suits brought by fiduciaries under the Declaratory Judgment Act and § 1132(a)(1).

In addition to the foregoing analysis, the court has not identified (nor have the plaintiffs suggested) a reason Congress might wish to make nationwide service available when a fiduciary brings the kind of suit SuperMedia has brought. The court concludes, then, contrary to the plaintiffs' theory, that § 1132(e)(2) should not be available to a fiduciary merely on the ground that the court has subject matter jurisdiction of its declaratory judgment action.[6]

---

[6]     The court also notes that the Fifth Circuit has, since *Busch v. Buchman, Buchman, & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994) ("[W]hen a federal court is attempting to exercise personal jurisdiction . . . based upon a federal

(continued...)

Though the plaintiffs did not propose it, the court may still find nationwide service of process is available to SuperMedia if this suit is authorized by § 1132(a)(3), which, unlike § 1132(a)(1), does contemplate direct actions by fiduciaries.  29 U.S.C. § 1132(a)(3) permits a fiduciary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  The problem for SuperMedia, though, is similar to that faced by the plan administrator in *Gulf Life*. See *Gulf Life*, 809 F.2d at 1523-24.  SuperMedia must rely on prong (B)(ii) of the provision, because it did not request injunctive relief and, as noted below, it does not seek to "redress . . . violations" of ERISA or a plan.  *See generally* Complaint.  Without deciding whether this particular cause of action is equitable or legal, the court nevertheless thinks that it is not one to "enforce" the provisions of ERISA or a plan.

The term "enforce" is not statutorily defined.  *See* 29 U.S.C. § 1002.  Applying traditional definitions, though, an action to "enforce" something is an action "to

---

[6](...continued)
statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States."), expressed "grave misgivings" about the notion that merely requiring minimum contacts with the United States is sufficient due process protection to defendants in actions under nationwide service of process provisions.  See *Bellaire*, 97 F.3d at 826.  It is unclear whether the Fifth Circuit will revisit this issue.  Nevertheless, the court thinks that where the availability of nationwide service of process is doubtful, as here, given the Fifth Circuit's reservations about the due process analysis, doubt should be resolved in favor of strengthening the defendants' due process rights.

compel obedience to" or "to give force or effect to" that thing.  *See* Black's Law

Dictionary 608 (9th ed. 2009).  In a statutory or contractual context, an action to

"enforce" a provision typically is instituted in response to another party's violation of

obligations created by that provision.  See *id.* ("Loosely, to compel a person to pay

damages for not complying with (a contract).")  Here, by seeking a declaration of its

amended plan's legality, SuperMedia does not petition the court to compel anyone's

obedience to that plan.  *See* Complaint at 2-3.  Indeed, the plaintiffs' pleadings give

no indication that there is any current "disobedience" to (or violation of) the terms of

the plan.  *See generally* Complaint and Plaintiffs' Response.  In addition, a declaration

of legality does not give any particular "force" or "effect" to the plan.  In other words,

the declaration itself (assuming it issues) will not require any specific change in a

party's response or behavior that was not already required by the amended plan.

SuperMedia brings, as did the administrator in *Gulf Life*, a purely defensive action,

not an action to "enforce" its plan.  See *Gulf Life*, 809 F.2d at 1523-24.

Furthermore, Congress has demonstrated in § 1132(a)(1) that it knows how to

authorize the type of action SuperMedia brings here.  That provision gives a

beneficiary the right to pursue an action "to clarify his rights to future benefits."

That type of action is distinct in § 1132(a)(1) from an action "to enforce his rights

under the terms of the plan."  If Congress had meant to directly authorize a fiduciary

to bring a suit such as this one, one expects it would have included a provision in

- 14 -

§ 1132(a)(3) for a fiduciary employer like SuperMedia to "clarify" its rights with respect to plans they enact, amend, or terminate.  See *Gulf Life*, 809 F.2d at 1524.

SuperMedia's declaratory judgment action thus is not directly authorized by 29 U.S.C. § 1132(a)(3).  Since there is no other provision of ERISA that conceivably authorizes this type of action by a fiduciary, the action is consequently not one "under this subchapter," 29 U.S.C. § 1132(e)(2), for which nationwide service of process is available.  The court must therefore proceed to analyze whether the traditional legal requirements for the exercise of personal jurisdiction have been met with respect to these defendants.

b.  Traditional Long-Arm Personal Jurisdiction

A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).  A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent that he would be amenable to the jurisdiction of a state court in the same forum.[7]  *Pedelahore*

---

[7]     This is the traditional analysis in diversity of citizenship cases, where state law supplies the rule of decision.  In this case, the plaintiffs sue under federal law, *viz.*, 29 U.S.C. § 1001 *et seq.*  In this situation, federal courts adopt state jurisdictional statutes to reach out-of-state defendants.  See *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482 (5th Cir.), *cert. denied*, 555 U.S. 816 (2008).

*v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984).  Applying state law, this court

must first determine whether Texas, the forum state, could assert long-arm

jurisdiction.  *Id*.  Because the Texas long-arm statute confers jurisdiction to the limits

of the federal constitution, *Access Telecom, Inc. v. MCI Telecommunications Corporation*,

197 F.3d 694, 716 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000); *Hall v.*

*Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on*

*other grounds*, 466 U.S. 408 (1984), the court need only concern itself with the federal

due process inquiry.  *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Wilson*,

20 F.3d at 647 n.1; see also TEX. CIV. PRAC. & REM .CODE ANN § 17.041 *et seq.*

(Texas long-arm statute).

Due process requires the satisfaction of two elements to exercise personal

jurisdiction over a non-resident defendant:  (1) the nonresident must have some

minimum contact with the forum that results from an affirmative act on his part such

that the nonresident defendant could anticipate being haled into the courts of the

forum state; and (2) it must be fair or reasonable to require the nonresident to defend

the suit in the forum state.  *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 476

(1985); *Gulf Consolidated Services, Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1073

(5th Cir.), *cert. denied*, 498 U.S. 900 (1990).  The Due Process Clause ensures that

persons have a "fair warning that a particular activity may subject [them] to the

jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)).

To establish minimum contacts with the forum, a nonresident defendant must do some act by which he "purposefully avails [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  However, the unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement.  *Burger King*, 471 U.S. at 474 (quoting *Hanson*, 357 U.S. at 253); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (citing *Kulko v. California Superior Court*, 436 U.S. 84 (1978); *Hanson*, 357 U.S. at 253).  In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum.  *Quill Corporation v. North Dakota*, 504 U.S. 298, 307 (1992).

Two types of *in personam* jurisdiction may be exercised over a nonresident defendant: specific jurisdiction and general jurisdiction.  Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard. *J.R. Stripling v. Jordan*

*Production Company, LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quotations and

citations omitted).  "When a court exercises personal jurisdiction over a defendant

based on contacts with the forum related to the particular controversy, the court is

exercising 'specific jurisdiction.' "  *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773,

777 (5th Cir. 1986) (citations omitted), *cert. denied*, 481 U.S. 1015 (1987). General

jurisdiction, on the other hand, may be found when the nonresident's contacts with

the forum are "continuous and systematic," even though the claim is unrelated to

those contacts.  *Helicopteros Nacionales*, 466 U.S. at 415-16.

Under either a specific or general jurisdiction analysis, however, "the

constitutional touchstone remains whether the defendant purposefully established

'minimum contacts' in the forum [s]tate."  *Burger King*, 471 U.S. at 474 (quoting

*International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945)).  The

"purposeful availment" requirement of the minimum contacts inquiry "ensures that a

defendant will not be haled into a jurisdiction solely as a result of 'random,'

'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party

or a third person.' "  *Id*. at 475 (citations omitted).  A plaintiff must establish a

substantial connection between the nonresident defendant and the forum state.  *Jones

v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir.), *cert.

denied*, 506 U.S. 867 (1992); *Bearry v. Beech Aircraft Corporation*, 818 F.2d 370, 374

- 18 -

(5th Cir. 1987) (citing *Burger King*, 471 U.S. at 475 n.18; *McGee v. International Life Insurance Company*, 355 U.S. 220 (1957)).

A court must consider all factors when making the purposeful availment inquiry - "no single factor, particularly the number of contacts, is determinative." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982); see also *Coats v. Penrod Drilling Corporation*, 5 F.3d 877, 884 (5th Cir. 1993), *cert. denied*, 510 U.S. 1195 (1994).

With minimal accompanying argument and no relevant legal citation, the plaintiffs allege seven categories of "contacts" that each of the moving defendants have had with Texas. *See* Plaintiffs' Response at 13-14. The court is not persuaded that any one of these categories, considered either alone or in tandem, is sufficient to establish the defendants' minimum contacts with Texas, which would enable the court to exercise specific personal jurisdiction.[8]

---

[8]     The court assumes the plaintiffs are arguing for specific jurisdiction, though they do not mention the term. This is because the contacts the plaintiffs list are plainly insufficient to show the kind of "continuous, systematic" contact with this forum that would be necessary to a finding of general personal jurisdiction.

First, SuperMedia points to the moving defendants' involvement as class-action plaintiffs in a suit involving similar issues before this court. *Id.* at 13.  The moving defendants are not named plaintiffs in that class action lawsuit, however.  *See* Second Amended Complaint for Proposed Class Action Relief Under ERISA (docket entry 64) in Northern District of Texas civil action 3:09-CV-2262-G-BF.  In addition, since the class in that case was certified as a "non-opt-out" injunctive class under FED. R. CIV. P. 23(b)(2), *see* Order for Class Certification at 1-2 (docket entry 55) in Northern District of Texas civil action 3:09-CV-2262-G-BF, the mere fact that the moving defendants are absent class members is irrelevant to the question whether they have either "purposefully availed" themselves of this forum or have sufficient minimum contacts that the court may exercise personal jurisdiction over them.  *See* 7AA C. Wright & A. Miller, *Federal Practice & Procedure Civ.* § 1775 (3d ed.) ("The effect of a judgment in an action under Rule 23(b)(2) is the same as under Rule 23(b)(1), which means that all class members will generally be bound."); FED. R. CIV. P. 23(c)(2)(A) ("For any class certified under Rule 23(b)(1) or (b)(2), the court *may* direct appropriate notice to the class.") (emphasis added); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) ("Although notice to and therefore precise definition of the members of the suggested class are important to certification of a subdivision (b)(3) class, notice to the members of a (b)(2) class is not required and the actual

membership of the class need not therefore be precisely delimited."); *Shook v. El Paso County*, 386 F.3d 963, 972 (10th Cir. 2004), *cert. denied*, 544 U.S. 978 (2005).

Second, SuperMedia asserts that the moving defendants are "voluntary participants" in SuperMedia's benefits plans, based in Texas.  Plaintiffs' Response at 13.  However, the fact that SuperMedia and the administrators of its benefits plans are based in Texas is a fortuity.  See *Moncrief Oil International Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007).  The happenstance that one has contracted with a party headquartered in a particular state is insufficient on its own to establish minimum contacts.  *Id.*  The Supreme Court made clear in *Burger King* that the facts and circumstances surrounding the formation and contemplated execution of a contract are what matter in the minimum contacts analysis.  See *Burger King*, 471 U.S. at 479.  SuperMedia points to no such clarifying facts regarding formation and execution of the defendants' contracts with Texas-based SuperMedia that would support this court holding that the moving defendants have minimum contacts with Texas.

Third, SuperMedia argues that its benefits plans contain choice-of-law provisions stating they are governed by Texas law, where not preempted by federal law (including ERISA).  Plaintiffs' Response at 13.  With respect to choice-of-law provisions, the Supreme Court specifically held in *Burger King* that "such a provision standing alone would be insufficient to confer jurisdiction."  *Id.* at 482.  In *Burger*

*King*, a choice-of-law provision in a franchise contract, combined with the defendant's long-standing relationship with the franchisor's Miami headquarters, were facts held sufficient to show the defendant's minimum contacts with Florida.  *Id.*  Here, there is no other relevant contact to which the plaintiffs have pointed which, when combined with the benefits plans' choice-of-law provisions, would establish a level of contact sufficient for the court to exercise specific personal jurisdiction over the moving defendants.

The remaining four categories of facts to which SuperMedia points to establish the moving defendants' "minimum contacts" with Texas are even further afield than the three discussed above and warrant no comment or analysis.  SuperMedia has therefore not satisfied its burden of making a *prima facie* showing of personal jurisdiction.

Since the court concludes that it does not have personal jurisdiction over the moving defendants, their motion to dismiss SuperMedia's claims against them is granted.

B.  The Plaintiffs' Motion to Dismiss the
Mentzer Defendants' Counterclaims

In their answer, the Mentzer defendants brought two counterclaims against the plaintiffs, the first against the plaintiff SuperMedia Employee Benefits Committee (the "EBC") for breach of fiduciary duty under ERISA Section 404(a)(1), and the second against all of the plaintiffs, for violation of ERISA Section 510.  *See* Answer

and Counterclaim by Defendants Mentzer, Noe, Ohnstad, Palmer, and Zenus

("Counterclaims") at 7-8 ¶¶ 15-18 (docket entry 73).  The plaintiffs have moved to

dismiss the Mentzer defendants' counterclaims for failure to state claims on which

relief can be granted.  *See generally* Plaintiffs' Motion to Dismiss the Counterclaim by

Defendants Mentzer, Noe, Ohnstad, Palmer, and Zenus ("Plaintiffs' Motion")

(docket entry 86).

### 1.  *Legal Standard*

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead

'enough facts to state a claim to relief that is plausible on its face.'"  *In re Katrina*

*Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic*

*Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182

(2008).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555

(citations, quotation marks, and brackets omitted).  "Factual allegations must be

enough to raise a right to relief above the speculative level, on the assumption that all

the allegations in the complaint are true (even if doubtful in fact)."  *In re Katrina*

*Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks

omitted).  "The court accepts all well-pleaded facts as true, viewing them in the light

most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement to relief." *Id.* The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 678. The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (*quoting* FED. R. CIV. P. 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" his claims against the defendant "across the line from conceivable to plausible." See *id.* at 679-680.

- 24 -

## 2. *Breach of Fiduciary Duty*

The defendants allege that the EBC's decision to "fil[e] this civil action against them after soliciting them to complete and return a claim form" is a breach of fiduciary duty under 29 U.S.C. § 1104(a)(1) ("Section 404(a)(1)"). *See* Counterclaims at 7-8 ¶ 16. The plaintiffs argue that the EBC's decision to bring a declaratory judgment suit was not made in a fiduciary capacity, and that there can therefore be no breach where an entity is not performing a fiduciary function. *See* Plaintiffs' Motion at 8. The defendants respond, with no citation to any case law, that the EBC is not an employer or a plan sponsor and can act only as a fiduciary and in no other capacity. *See* Response by Defendants Mentzer, Noe, Ohnstad, Palmer, and Zenus to Plaintiffs' Motion to Dismiss Counterclaims ("Mentzer Defendants' Response") at 6 (docket entry 96).

This court has uncovered no case examining whether an employee benefits committee that brings and maintains a declaratory judgment suit is performing a fiduciary function. There is ample case law, however, that practically dictates the opposite conclusion. The Supreme Court has held that "[t]he threshold question" in ERISA breach of fiduciary duty cases is "not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*,

530 U.S. 211, 226 (2000).  The typical fiduciary functions, as the Court noted in

*Pegram*, involve "decisions about managing assets and distributing property to

beneficiaries."  *Pegram*, 530 U.S. at 231.  Thus courts have held that when employers

take actions like firing an employee and amending a benefits plan, they are not

performing "fiduciary functions" that trigger fiduciary duties under ERISA.  See

*Bodine v. Employers Casualty Company*, 352 F.3d 245, 251-52 (5th Cir. 2003) ("a

decision to terminate an employee, who is also a Plan beneficiary, is inherently *not*

fiduciary in nature") (emphasis in original); *Curtiss-Wright Corporation v. Schoonejongen*,

514 U.S. 73, 78 (1995) (citing *Adams v. Avondale Industries, Inc.*, 905 F.2d 943, 947

(6th Cir.), *cert. denied*, 498 U.S. 984 (1990), for the proposition that decisions to

terminate or amend benefits plans are not taken in a fiduciary capacity).

The court thinks the "action" at issue here, *i.e.* bringing and maintaining a

declaratory judgment suit for the purpose of determining the legality of benefits plan

amendments, does not even come close to the "fiduciary function" line.  As the

plaintiffs observed, *see* Plaintiffs' Motion at 9, the decision to bring a suit like this

flows from, and is intimately connected to, the decision to amend the plan.  Thus, the

logic of *Curtiss-Wright* controls.  The bringing and maintaining of a declaratory

judgment action seeking to determine the legality of proposed plan amendments is

not a "fiduciary function" that would support a claim for breach of fiduciary duty.

The only question that remains is what to make of the defendants' odd

assertion that, since the EBC is not an "employer" or "plan sponsor," it can *only* act in

a fiduciary capacity.  Mentzer Defendants' Response at 6.  The fact that the

defendants cite no case law supporting the assertion does not bode well for their

argument.  *Id*.  The plaintiffs have amply shown that nothing in ERISA's definitions

or provisions, or the case law interpreting them, suggests that an entity like the EBC

cannot act except in a fiduciary capacity.  *See* Plaintiffs' Reply to Response to Motion

to Dismiss the Counterclaims by Defendants Mentzer, Noe, Ohnstad, Palmer, and

Zenus ("Reply") at 2-4 (docket entry 97).  Moreover, and in direct contradiction to

the defendants' argument otherwise, the Supreme Court has reasoned that there is no

"apparent reason in the ERISA provisions to conclude . . . that" performing both

fiduciary and non-fiduciary functions "is permissible only for the employer or plan

sponsor." *Pegram*, 530 U.S. at 225.  Because the court agrees with the plaintiffs that

the EBC was not performing a fiduciary function when it brought this declaratory

judgment action with the other SuperMedia entities, the defendants' first

counterclaim for breach of fiduciary duty is dismissed.

### 3. *ERISA Section 510 Violation*

29 U.S.C. § 1140 ("Section 510") states that:

> [i]t shall be unlawful for any person to discharge, fine,
> suspend, expel, discipline, or discriminate against a
> participant or beneficiary for exercising any right to which
> he is entitled under the provisions of an employee benefit

- 27 -

> plan, this subchapter, section 1201 of this title, or the
> Welfare and Pension Plans Disclosure Act [29 U.S.C.A.
> § 301 *et seq.*], or for the purpose of interfering with the
> attainment of any right to which such participant may
> become entitled under the plan, this subchapter, or the
> Welfare and Pension Plans Disclosure Act.

The defendants assert that the plaintiffs' institution of this lawsuit against

them specifically (in contrast to the other 900 SuperMedia retirees), upon their

submission of requested claim forms, constitutes discipline and discrimination "for

exercising any right to which [they are] entitled."  Counterclaims at 8 ¶ 18; Mentzer

Defendants' Response at 9-10.

Intent is an element of a Section 510 discrimination claim.  See *Hines v.*

*Massachusetts Mutual Life Insurance Company*, 43 F.3d 207, 209 (5th Cir. 1995) (citing

*McGann v. H & H Music Company*, 946 F.2d 401, 404 (5th Cir. 1991), *cert. denied*,

506 U.S. 981 (1992)).  While the Mentzer defendants employ the label "specific

intent" multiple times in both their counterclaims and their response to the motion to

dismiss, *see* Counterclaims at 7-8 ¶¶ 14, 18, and Mentzer Defendants' Response at

10, the question post-*Twombly* is whether the facts the defendants have alleged make

it plausible that SuperMedia intended to discriminate against or discipline them by

naming them as defendants.  The court concludes that the facts alleged in the

defendants' counterclaims are insufficient to hurdle the plausibility threshold.  The

only alleged facts contributing to an inference of intent to discriminate are (1) that

the named defendants returned claim forms, (2) that SuperMedia instituted this suit

before taking action on the defendants' claim forms, and (3) that there are other retirees who returned claim forms whom SuperMedia did not name in its complaint. *See* Counterclaims at 6-7 ¶¶ 8, 10, 12-14.

These facts are insufficient to create an inference of intent to discriminate for at least two reasons.  First, there is no factual allegation that there was something special about these defendants, in contrast to the other 900 retirees who returned claim forms, that would have motivated SuperMedia to "discipline" or "discriminat[e]" against them (but not the others).  Indeed, the Mentzer defendants admit that the named defendants were selected "randomly."  Counterclaims at 6 ¶ 13.  Second, there are perfectly obvious and legitimate reasons that are likely to have motivated the selection of these defendants and the timing of this lawsuit: namely, SuperMedia's business judgment and its need to institute manageable litigation.  *See* Complaint ¶ 1, Plaintiffs' Motion at 2-3, and Reply at 5-6.  For the plaintiffs to institute this proceeding at all, someone had to be sued.  As the plaintiffs argued, it would have been impractical and costly on first filing to name and serve all 900 SuperMedia retirees who returned claim forms.  *See* Reply at 5.  The Federal Rules permit this sort of efficiency.  FED R. CIV. P. 23(a).  The rules do not require the plaintiff in an action against class defendants to sue the entire class from the outset.  *Id.*  Rather the rules contemplate an order certifying a class "[a]t an early practicable time."  FED. R. CIV. P. 23 (c)(1)(A).

The facts the Mentzer defendants have alleged give the court no reason to think that SuperMedia's business judgment and litigation strategy were not the motivating factors behind the timing of, and decision to pursue, this suit.  While the alleged facts certainly indicate the bare *possibility* of intent to discriminate, without more to overcome the (equally likely) possibility that SuperMedia's suit was motivated by its business judgment and litigation strategy, such facts do not give rise to a *plausible* inference of intent to discriminate.

Furthermore, to hold that the bare facts alleged here about SuperMedia's litigation strategy state a discrimination claim under Section 510 would imply that plaintiff employers in all ERISA declaratory judgment actions like this one should be required to massively reorient the way they proceed against a class of defendants.

In light of all of this, the court concludes that the Mentzer defendants have not alleged enough facts for the court to plausibly infer SuperMedia's intent to discriminate against and discipline them.  The plaintiffs' motion to dismiss the Mentzer defendants' Section 510 counterclaim is granted.

### III.  CONCLUSION

For the reasons stated above, the plaintiffs' motion to dismiss the Mentzer defendants' counterclaims is **GRANTED**, and the moving defendants' motion to dismiss for lack of personal jurisdiction is **GRANTED**.

**SO ORDERED**.

August 7, 2013.

_____

A. JOE FISH
**Senior United States District Judge**